IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

FERRELL ODEN, *et al.*,                )
                                       )
      Plaintiffs,                      )
                                       )
v.                                     )       CASE NO.  2:12-cv-1064-MEF
                                       )           (WO – Do Not Publish)
NANCY BUCKNER, *et al.*,               )
                                       )
      Defendants.                      )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Ferrell Oden ("Mr. Oden"), Lesa B. Oden ("Ms. Oden"), and Flo, Inc. d/b/a Oden's Boarding Homes (collectively, "Plaintiffs" or "the Odens") bring suit against Defendants Nancy Buckner ("Buckner"), Angela McClintock ("McClintock"), Sharon Bradford ("Bradford"), and Cheryl Swain ("Swain") (collectively, "Defendants") for violations of their constitutional rights under 42 U.S.C. § 1983 and for various state law claims.   Before the Court are motions to dismiss filed by Buckner (Doc. #10) and McClintock, Bradford, and Swain (Doc. #14).  For the reasons discussed below, Defendants' motions are due to be GRANTED as to all federal claims and the pendent state law claims are due to be DISMISSED WITHOUT PREJUDICE.

## I. JURISDICTION AND VENUE

The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1343(a), and 1367.  Additionally, Defendants have not argued that the Court lacks personal jurisdiction over them.  Pursuant to 28 U.S.C. § 1391(b), venue is appropriate in this district.

1

## II. STANDARD OF REVIEW

Defendants move to dismiss the Odens' complaint on the basis of both Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

Where a defendant brings a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), the motion addresses the court's subject matter jurisdiction to hear the case. Such a motion is made either as a facial attack or as a factual attack. *Stalley v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1233 (11th Cir. 2008). A factual attack challenges the actual existence of subject matter jurisdiction using extrinsic material. *Id.* A facial attack on the complaint asks the court merely to look and see if the plaintiff has sufficiently alleged a basis for subject matter jurisdiction. *Id.* In considering a facial attack, as with a Rule 12(b)(6) motion, the court must take as true the allegations in the complaint. *See Carmichael v. Kelloy, Brown & Root Servs., Inc.,* 572 F.3d 1271, 1279 (11th Cir. 2009). Defendants bring their motion as a facial attack, claiming there are not sufficient allegations in the complaint to support a finding that the Court has subject matter jurisdiction.

In considering a Rule 12(b)(6) motion to dismiss, the court accepts the plaintiff's allegations as true and reads them in the light most favorable to the plaintiff. *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993) (citation omitted). Further, a district court must favor the plaintiff with "all reasonable inferences from the allegations in the complaint." *Stephens v. Dep't of Health and Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).  A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  A complaint does not state a facially plausible claim for relief if it shows only "a sheer possibility that the defendant acted unlawfully." *Id.*  While a complaint need not contain detailed factual allegations to survive a Rule 12(b)(6) motion, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (internal quotation and citations omitted).  Absent the necessary factual allegations, "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice.  *Id.* Courts are also not "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### III. STATEMENT OF FACTS

Since this case is before the Court on a Motion to Dismiss, the Court accepts the following allegations in the Odens' complaint as true:

The Odens owned and operated two facilities in Jefferson County, Alabama known as Oden's Boarding Home I and Oden's Boarding Home II.  Both facilities were fully licensed and regulated as communal living facilities by the Jefferson County Board of Health.  The residents of these communal living facilities were adults who were competent to manage and to carry on their own affairs but who were in need of shelter, aid, and

sustenance.[1]  The majority of the residents were referred to Oden's Boarding Homes by Jefferson County Department of Human Resources ("Jefferson County DHR"), Alabama DHR, or various other public and private agencies.  The residents of Oden's Boarding Homes contracted with the Odens to pay a nominal sum in return for room and board.  This sum covered many of the expenses associated with operating the facilities.

In October 2010, Swain, a social worker employed by Jefferson County DHR, notified Oden that she was initiating an investigation of Oden's Boarding Home II based on allegations that residents were venturing into traffic and, begging for food and money, that residents were not getting adequate food, that residents were not receiving their medications, and that residents were not being taken to scheduled doctor's visits.  At the time of this investigation, six residents had been living at Oden's Boarding Home II for periods ranging from two to eleven years.  Swain conducted an inspection of Oden's Boarding Home II on or about October 1 or October 2, 2010.  The October 2010 inspection of Oden's Boarding Home II was accompanied by media coverage that cast the Odens in a negative light.  The Odens did not contact the media and did not do anything that would cause the media to cover the investigation.  During the inspection, residents told Swain that they were being provided meals and medications.  No further action was taken by Jefferson County DHR at the conclusion of the inspection.

On December 8, 2010, Jefferson County DHR removed the six residents from Oden's

---

[1]  It appears from the complaint, and it is not disputed, that the residents all fell within the Adult Protective Service's Act definition of protected persons.  *See* Ala. Code § 38-9-4(b).

4

Boarding Home II.  The Odens were not given prior notification of the removal or an opportunity to respond to the allegations of abuse or neglect prior to removal.  The Odens also were not given the opportunity to cure any alleged deficiencies. The removal was accompanied by negative media coverage, but again, the Odens did not contact the media or do anything that would cause the media to cover the removal.

Following the October 1 or 2, 2010 inspection, but prior to the December 8, 2010 removal, caregivers for residents at Oden's Boarding Home I removed residents from that facility based on Jefferson County DHR's allegations of abuse, neglect and exploitation at Oden's Boarding Home II.  Organizations who had previously served as referral sources for Oden's Boarding Homes told the Odens that Jefferson County DHR had instructed them not to make new referrals to the Odens' communal living facilities because the Odens were guilty of abuse, neglect, and exploitation.  As with the December 8, 2010 removal at Oden's Boarding Home II, these statements were made to referral sources before Jefferson County DHR had determined the allegations of abuse and neglect were true and before Jefferson County DHR had held a hearing relating to these allegations.

On December 8, 2010, after the six residents were removed from Oden's Boarding Home II, Jefferson County DHR delivered a letter to Mr. Oden stating:

> The Jefferson County Department of Human Resources has completed its investigation regarding the allegations that you have abused/neglected or exploited an adult.  Our investigation shows reasonable cause to believe the complaint is indicated; i.e. true (and/or that information contained in the investigative report should be disseminated to protect other vulnerable persons). . . . The Department intends to share the results and information contained in the report of this investigation with your employer or licensing

5

and/or certifying agency and may choose to send this information to future or prospective employers or licensing and/or certifying agencies for the protection of elderly and/or disabled or otherwise vulnerable persons. However, before making a final determination on the allegations of abuse, neglect, or exploitation, we are offering you the opportunity to have an administrative hearing to contest our findings.

The letter was signed by Swain and Swain's immediate supervisor, Bradford.

At the Odens' request, a hearing was held before Administrative Law Judge William Prendergast on May 3, 2011. The Odens and representatives of DHR were present and represented by counsel.  On May 19, 2011, Judge Prendergast reversed DHR's findings, holding:

> [B]ased on the evidence presented and the regulations governing the facility, I am unable to determine that Mr. Oden violated a responsibility to the residents or neglected those individuals.  Therefore, the determination of *indicated* in this matter is reversed, and this matter is found to be ***not indicated***.

Despite the outcome of the ALJ hearing, the Odens were harmed as a result of the Jefferson County DHR investigation.  The Odens claim that DHR's removal actions terminated the contractual relationship between them and the six residents at Oden's Boarding Home II, leaving the Odens unable to maintain their properties or to pay their mortgage on the properties.  Moreover, the negative media attention accompanying the investigation and removal, and Swain's defamatory statements relating to allegations of abuse, neglect, and exploitation, caused agencies to stop referring residents to the Odens' facilities.  As a result, the Odens were financially unable to operate communal living facilities, and they lost title and possession of their communal living properties as a result of

foreclosure.  The financial loss, media attention, and negative stigma have further left the Odens unable to operate communal living facilities or to provide similar services.

## IV. DISCUSSION

The Odens assert a claim against Defendants under 42 U.S.C. § 1983 alleging violations of their procedural due process rights under the Alabama and United States Constitutions.[2]  Specifically, the Odens allege that Swain deprived them of their right to be free from stigmatization by publishing false and defamatory information that the Odens abused, neglected, and exploited their residents prior to providing them with a pre-deprivation hearing, and that this placed a tangible burden on their employment opportunities.  The Odens further allege that they were deprived of their protected property interest in  future earnings from the contracts they had with the residents, which were terminated when Jefferson County DHR removed the six residents from Oden's Boarding Home II prior to providing the Odens with a pre-deprivation hearing. The Odens also bring claims against Buckner, who is the director of Alabama DHR, McClintock, who is the director of Jefferson County DHR, and Bradford, who is Swain's supervisor, in their supervisory capacities for deliberate indifference, failure to train and supervise, and failure to implement and establish a policy of providing a pre-deprivation hearing.  Finally, the Odens bring state law claims against Defendants for conversion, defamation, and interference

---

[2]  Although the words "substantive due process" appear once on the face of the Odens' complaint, it does not appear that the Odens intended to bring a claim against Defendants for violations of their substantive due process rights.

with contractual relations.

The Odens seek the following declaratory and injunctive relief: (1) an order enjoining Defendants from further sharing the information contained in the investigatory report and the indicated disposition with employers and licensing agencies; (2) an order directing Defendants to expunge, purge, and remove any information identifying the Odens as responsible for abuse, neglect, or exploitation; (3) an order requiring Defendants to implement a system to ensure DHR employees are properly trained; and (4) an order directing Defendants to implement rules and regulations requiring that a pre-deprivation hearing be afforded to persons indicated for abuse, neglect, or exploitation prior to the taking of property or the dissemination/publication of information relating to the report, inspection, investigation and/or disposition.  The Odens also seek compensatory and punitive damages and attorney's fees.

## A.    Federal Claims Against Defendants in Their Official Capacities

The Odens bring claims pursuant to § 1983 alleging that Defendants violated their procedural due process rights under the United States and Alabama Constitutions.[3] Defendants contend that any such claims against them in their official capacities are due to be dismissed because they are barred by Eleventh Amendment sovereign immunity.

### 1.    Compensatory and Punitive Damages

---

[3]   Section 1983 only provides relief for a violation of federal rights.  *See Motes v. Myeres*, 801 F.2d 1055 (11th Cir. 1987).  Accordingly, the Odens § 1983 claims for violations of the Alabama Constitution are DISMISSED WITH PREJUDICE.

The Odens' complaint brings claims against Buckner, McClintock, Bradford, and Swain for damages in their official capacities as employees of Alabama and Jefferson County DHR. It is undisputed that both Alabama DHR and Jefferson County DHR are state agencies. *See Ross v. State of Ala.*, 893 F. Supp. 1545, 1550 (M.D. Ala. 1995) (holding that county DHR, which by statute is a division of the state DHR, is a state agency for purposes of Eleventh Amendment immunity). A suit against a government official in his official capacity is considered a suit against the official's office itself. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). When that office is an arm of the state government, the Eleventh Amendment "protects the sovereignty of the state by prohibiting suits when recovery would be paid from state funds."[4] *Robinson v. Ga. Dep't of Transp.*, 966 F.2d 637, 638–39 (11th Cir. 1992); *see Edelman v. Jordan*, 415 U.S. 651 (1976) (defining scope of sovereign immunity under the Eleventh Amendment). Because the Eleventh Amendment bars suits for monetary relief against a state or its instrumentalities by its own citizens, Plaintiffs' official capacity claims for money damages against Defendants are prohibited and, therefore, DISMISSED WITH PREJUDICE.

## 2.   Declaratory and Injunctive Relief

While the Eleventh Amendment has been construed to bar suits against a state brought by that state's own citizens, absent the state's consent, there exists a well-recognized exception to this general rule "for suits against state officers seeking *prospective* equitable

---

[4] There is no indication that Alabama has waived its sovereign immunity here.

relief to end *continuing* violations of federal law." *McClendon v. Ga. Dep't of Cmty. Health,* 261 F.3d 1252, 1256 (11th Cir. 2001) (emphasis in original); s*ee also Ex parte Young,* 209 U.S. 123, 159–60 (1908).

> In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.' *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296, 117 S. Ct. 2028, 138 L. Ed. 2d 438 (1997) (O'CONNOR, J., joined by SCALIA and THOMAS, JJ., concurring in part and concurring in judgment); see also *id.*, at 298-299, 117 S. Ct. 2028 (SOUTER, J., joined by STEVENS, GINSBURG, and BREYER, JJ., dissenting).

*Verizon Maryland, Inc. v. Public Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002).

However, the Odens may not employ the *Ex Parte Young* fiction unless they can establish Article III standing. Article III standing is a constitutional limitation on the exercise of federal court jurisdiction. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). A plaintiff will generally have standing only where (1) she experienced injury in fact, (2) the injury is fairly traceable to the defendant's conduct, and (3) her harm is likely to be redressed should the court order relief. *Id.* at 60. "Plaintiffs bear the burden of establishing each of the three standing elements." *See Bennet v. Spear*, 520 U.S. 154, 167–68 (1997). "At the motion to dismiss stage, the party seeking standing must rely on the facts alleged in the complaint." *Id.* (citing *Lujan*, 504 U.S. at 561).

In order to have standing to bring a claim for prospective or injunctive relief, a plaintiff must allege facts that demonstrate "a sufficient likelihood that he will again be wronged in a similar way." *City of Los Angeles v. Lyons*, 461 U.S. 95, 112 (1983).

> Because injunctions regulate future conduct, a party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate - as opposed to a merely conjectural or hypothetical - threat of *future* injury.  Logically, a prospective remedy will provide no relief for an injury that is, and likely will remain, entirely in the past.  Although past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury, past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse affects.

*Church v. City of Hunstville*, 30 F.3d 1332, 1337 (11th Cir. 1990) (alteration to original) (citations and internal quotation marks omitted).

The seminal case applying this standard is *City of Los Angeles v. Lyons*.  The plaintiff in *Lyons* sued the City of Los Angeles and four police officers after being subjected to a chokehold without provocation during the course of his arrest.  *Lyons*, 461 U.S. at 98.  The plaintiff sued for damages, as a well as injunctive and declaratory relief that would bar the city from enforcing a policy that allowed officers to use chokeholds absent an immediate threat of deadly force.  *Id.*  Although the Supreme Court allowed the plaintiff's claim for money damages to proceed, it found that the plaintiff did not have standing to pursue injunctive relief because there was not a "sufficient likelihood that he will again be wronged in a similar way."  *Id.* at 111.  In other words, there was no "real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without provocation or resistance on his part."  *Id.* at 105.

A recent case in this district, relying on the decision in *Lyons*, found that a group of plaintiffs did not have standing to seek "generalized injunctive or declaratory relief" from

11

a DHR policy that did not provide a hearing before placing alleged child abusers on Alabama's Central Registry. *See Thomas v. Buckner*, No. 2:11-cv-245-WKW, 2011 WL 4071948, at *4 (M.D. Ala. Sept. 13, 2011). In *Thomas*, plaintiffs were investigated by Alabama DHR based on reports of child abuse and neglect and were subsequently placed on Alabama DHR's Central Registry as persons who were "indicated" as child abusers. *Id.* at *2. The plaintiffs brought suit against Alabama DHR and Shelby County DHR, as well as various DHR employees, alleging violations of their procedural due process rights based on DHR's failure to provide them with a hearing or to give them an opportunity to exonerate themselves. *Id.* at *3–4. The plaintiffs essentially sought two types of injunctions. First, they sought an injunction requiring DHR to remove their names from the Central Registry until after they had been given an opportunity to defend against the child abuse indication. *Id.* at *3. Second they requested an injunction barring the state from placing individuals on the Central Registry prior to being afforded a hearing in the future. *Id.* As to the former, the district court held that the plaintiffs had standing to pursue the injunction because, as alleged, there were "live controversies as to whether [the plaintiffs] are entitled to hearings to challenge the Alabama or Shelby County DHR investigations at issue." *Id.* at *5. However, as to the latter, the district court found that the plaintiffs did not have standing to pursue such injunctive relief because "it is pure speculation to say that any one of these Plaintiffs will become the subject of a future DHR investigation, and speculation on top of speculation that it will result in another unfavorable disposition that any one of them will seek to challenge through a hearing." *Id.*

12

In this case, the Court finds that, like in *Thomas*, the Odens are not entitled to seek prospective injunctive or declaratory relief because the complaint does not allege a sufficient likelihood that the Odens will suffer a future wrong by DHR in a similar way.  As in *Thomas*, it is pure speculation that the Odens would ever be subject to a future DHR investigation and "speculation upon speculation" that the investigation would lead to similar removal of residents or an indicated disposition.  The speculative nature of the inquiry is compounded by Mr. Oden's own allegation that he no longer is engaged in operating communal living facilities, which further reduces the likelihood that he will be investigated for abuse, neglect, or exploitation of other adults.  Accordingly, the risk of repeated injury at the hands of Jefferson County DHR or Alabama DHR is too hypothetical or conjectural to support generalized standing for prospective injunctive relief.  *See Lyons*, 461 U.S. at 102.

Moreover, the Court in *Thomas* only conferred standing to bring claims for injunctive relief that would require DHR to hold a hearing to determine whether its findings were proper and whether the plaintiffs' names should remain on Central Registry as to the investigation at issue.  The "real and immediate" future harm stemmed directly from the plaintiffs' names remaining published in the Central Registry.  Here, an ALJ hearing has already been held, and the Odens' disposition has been overturned.  There are no allegations that the Odens' names remain on any internal or external database listing that they are, or were formerly, indicated for abuse, neglect, or exploitation.  Nor are there any allegations that Alabama DHR or Jefferson County DHR are continuing to disseminate information

13

relating to their investigation of the Odens or their previously indicated status.[5] In short, unlike in *Thomas*, there is no "continuing controversy" between the parties here; the alleged harm is completely in the past.  Accordingly, and because the Odens have failed to show that the injury they have suffered or the threat of injury they may suffer is real and immediate, rather than conjectural or hypothetical, they are not entitled to prospective injunctive or declaratory relief, and those claims are DISMISSED WITH PREJUDICE.

## B.     Federal Claims against Defendants in their Individual Capacity

### 1.     Qualified Immunity

The Court now turns to the Odens' claims for money damages against Defendants in their individual capacity, which includes claims against Defendants for violations of their right to procedural due process and claims against Buckner, McClintock, and Bradford in their supervisory capacity for deliberate indifference, failure to train and supervise, and failure to implement and establish a policy of providing a pre-deprivation hearing.

While the Eleventh Amendment shields state officers from damage suits in their official capacities, those officials are individually amenable to suit under 42 U.S.C. § 1983 for violations of the United States Constitution and federal law.  *See Graham*, 473 U.S. at 165–67.  However, a government official sued in his individual capacity under § 1983 may assert qualified immunity as an affirmative defense if he was performing a discretionary

---

[5] Although the Odens seek an order enjoining Defendants from further sharing information relating to the investigation and directing Defendants to remove information from their records relating the injunction, they have not alleged any facts suggesting that Defendants have not already done so.  Accordingly, the Odens have not alleged a sufficient injury in fact to support either request for relief.  *See Lujan*, 504 U.S. at 60.

function.  *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004).  "Once the official

has established that he was engaged in a discretionary function, the plaintiff bears the burden

of demonstrating that the official is not entitled to qualified immunity."  *Id*.  If the plaintiff

fails to furnish sufficient factual allegations at this stage, the defendant officer is entitled to

judgment.  *See Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1022 (11th Cir. 2001).  In this

case, there is no dispute as to whether Defendants were engaged in discretionary functions.

In *Saucier v. Katz*, the Supreme Court delineated a two-step analysis for determining

whether an officer engaged in a discretionary function is eligible for qualified immunity.  533

U.S. 194, 201 (2001).  The initial inquiry focuses on whether the plaintiff's allegations, if

considered true, show that the officer violated a constitutional right.  *Id*.  The absence of a

constitutional violation ends the inquiry.  *Id*.  However, where a court does find that an

officer acted in an unconstitutional manner, the analysis turns to whether the right in question

was clearly established so that the officer had fair warning that his conduct was

constitutionally prohibited.  *Id*.  In *Pearson v. Callahan*, the Supreme Court instructed lower

federal courts to use their sound discretion to decide which prong of the qualified immunity

to address first.  555 U.S. 223, 236 (2009).

In this case, the Odens allege that Defendants violated their right to procedural due

process by depriving them of their liberty and property prior to holding a pre-deprivation

hearing.  In the Eleventh Circuit, a plaintiff must prove the following three elements to

succeed on a § 1983 procedural due process claim: (1) a deprivation of a constitutionally-

protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate

process.  *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003).  Thus, a common element of succeeding on a liberty or property deprivation claim is proof that the process offered by Jefferson County DHR was constitutionally-inadequate.  The Odens essentially argue that, assuming they have met the first and second elements of a procedural due process claim, Defendants violated their constitutional rights by not offering them a hearing prior to taking the challenged actions.  Even if the Court were to find this indeed occurred, such a violation is not clearly established.

"For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citation and internal quotations omitted).  This standard does not require a prior court decision to have declared the precise set of facts presently alleged unlawful, "but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 438 U.S. 635, 640 (1987).  "The salient question . . . is whether the state of the law . . . gave [the officers] fair warning that their alleged treatment of [the plaintiff] was unconstitutional." *Hope*, 536 U.S. at 741.

The Eleventh Circuit has further refined the analysis of when the law is clearly established.  It has observed that "fair and clear" notice may be given by (1) the "obvious clarity" of the pertinent federal statute or constitutional provision, such that qualified immunity may be overcome in the "total absence of case law", (2) the judicial determination that certain conduct has been defined as unlawful without regard to particular facts, and (3) holdings in specific cases that are tied to certain facts. *Vinyard v. Wilson*, 311 F.3d 1340,

16

1350–51 (11th Cir. 2002) (emphasis removed).  Only the decisions of the Supreme Court, the Eleventh Circuit, or the highest court in the state in which the case arose provide the case law capable of clearly establishing the boundaries of rights in the qualified immunity analysis.  *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 953 (11th Cir. 2003).

The Odens essentially argue that Defendants violated rights to procedural due process by not offering them a hearing prior to taking the challenged actions.  Such a violation has not been clearly established.[6]  As stated above, a right is only clearly established where the law is sufficiently clear so as to put Defendants on notice that the failure to provide a pre-deprivation hearing in a context similar to this case violates the Fourteenth Amendment.  The Odens state that there is a "wealth of 'clearly established law' . . . informing a reasonable, prudent and competent state actor that a taking cannot occur without a pre-deprivation hearing," but they only direct the Court to *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985).  In *Loudermill*, the Supreme Court held that due process required a hearing prior to discharging public employees who could only be discharged for cause.  *Id.* at 545–46.  While this case may stand for the broad proposition that a hearing is required prior to depriving an individual of a constitutionally protected right, it was not decided at a sufficiently "particularized" or "relevant" level of generality such that Defendants would have been on notice that their failure to provide the Odens with a pre-deprivation hearing

---

[6] McClintock, Bradford, and Swain alternatively argue that they are absolutely immune to any claims under the doctrine of prosecutorial immunity.  Because the Court finds they are protected by qualified immunity, the Court does not reach this issue.  *See, e.g.*, *Salyer v. Patrick*, 874 F.2d 374, 378 (6th Cir. 1989) (refusing to reach the issue of prosecutorial immunity where defendants were shielded with qualified immunity).

amounted to a constitutional violation. *See Anderson*, 483 U.S. at 640 (explaining that applying the clearly established standard at a high level of generality would destroy the proper application of the rule and, therefore, "the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense"). Thus, the Court does not find that *Loudermill* sets out a "clearly established" right to a pre-deprivation hearing in the context of the state's authority, and duty, to protect adults from abuse, exploitation and neglect, nor does it provide any DHR official with reasonable guidance relating to when their actions would violate the constitution. Because the Odens have not pointed the Court to any case that would have provided Defendants with knowledge that their conduct constituted a constitutional violation, and because the Court, after surveying relevant U.S. Supreme Court, Eleventh Circuit, and Alabama Supreme Court jurisprudence, cannot find authority for the same, the Odens' claims against Defendants in their individual capacity are barred by qualified immunity and, therefore, are DISMISSED WITH PREJUDICE.[7]

**D.    State Law Claims**

Only the Odens' state law claims for conversion, defamation, and interference with contractual relations remain. The Court has supplemental subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1367. Section 1367(c)(3) provides that a "district court

---

[7] Because all claims against Defendants in their individual capacity for money damages are dismissed, the Court will not address the Odens' § 1983 supervisory liability claims, all of which are additional individual capacity claims for money damages.

18

may decline to exercise supplemental jurisdiction over a claim if . . . the district court has dismissed all claims over which it has original jurisdiction." Because the federal claims over which this Court had original jurisdiction have been resolved against the Odens, the Court declines to exercise its supplemental jurisdiction over the state law claims against Defendants and, instead, dismisses them without prejudice. *See* 28 U.S.C. § 1367(c)(3); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial."). This dismissal should not work to the Odens' disadvantage if they choose to bring these claims in State court because the statute of limitations for these claims are tolled during the pendency of this action. *See* 28 U.S.C. § 1367(d).

## V. Conclusion

Based on the foregoing, it is hereby ORDERED that Defendant Buckner's Motion to Dismiss (Doc. #10) and Defendants McClintock, Bradford, and Swain's Motion to Dismiss (Doc. #14) are GRANTED. All federal claims (Count 1) against Defendants in their official and individual capacities are DISMISSED WITH PREJUDICE. All state claims (Counts 2–4) against Defendants are DISMISSED WITHOUT PREJUDICE.

DONE this the 31st day of March, 2014.

_____ /s/  Mark E. Fuller _____
UNITED STATES DISTRICT JUDGE